IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CONSOLIDATION COAL COMPANY, a Delaware
Corporation; McELROY COAL COMPANY, a
Delaware Corporation; THE OHIO COAL
COMPANY, a Delaware Corporation;
THE HARRISON COUNTY COAL COMPANY,
a Delaware Corporation; THE MONONGALIA
COUNTY COAL COMPANY, a Delaware
Corporation; THE MARION COUNTY COAL
COMPANY, a Delaware Corporation; and
THE MARSHALL COUNTY COMPANY, a
Delaware Corporation,

        Plaintiffs,

v.                //    CIVIL ACTION NO. 1:15CV167
                           (Judge Keeley)

UNITED MINE WORKERS OF AMERICA,
International Union;
UNITED MINE WORKERS OF AMERICA,
District 31; and
RONALD BOWERSOX,

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 7] AND DISMISSING CASE WITHOUT PREJUDICE

Pending before the Court is the motion to dismiss filed by the defendants, the United Mine Workers of America, International Union; the United Mine Workers of America, District 31; and Ronald Bowersox (collectively, "the UMWA") (Dkt. No. 7). The questions presented are (1) whether the Court has subject matter jurisdiction under Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207 (1994); and (2) whether the Court should dismiss the case because the collective bargaining agreement between the parties requires arbitration. The Court finds that it does have jurisdiction, but

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 7] AND DISMISSING CASE WITHOUT PREJUDICE**

nonetheless **GRANTS** the UMWA's motion to dismiss because MAEI was obligated to arbitrate the dispute. It therefore **DISMISSES** the case **WITHOUT PREJUDICE**.

## BACKGROUND

### A.    Factual Background

As it must, the Court construes the facts in the light most favorable to the non-moving party, here, the plaintiffs. See De'Lonta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013). Consolidation Coal Company, McElroy Coal Company, The Ohio County Coal Company, The Harrison County Coal Company, The Monongalia County Coal Company, The Marion County Coal Company, and The Marshall County Coal Company (collectively, "MAEI"), own and operate five underground bituminous coal mines within the Northern District of West Virginia (Dkt. No. 1 at 1-2). MAEI employs hourly wage UMWA workers pursuant to the National Bituminous Coal Wage Agreement of 2011 ("the CBA"). Id. at 2. Article III of the CBA provides that miners must report unsafe safety and health conditions to employers immediately; miners also must make an effort to resolve such issues first with employers. Id.

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 7] AND DISMISSING CASE WITHOUT PREJUDICE**

On December 5, 2013, Consol Energy, Inc. ("Consol") sold the five mines to Murray Energy Corporation ("MEC").[1] Id. at 2, 8. Shortly after the sale, between December 5-13, 2013, MEC's Chairman of the Board of Directors, President, and Chief Operating Officer, Robert E. Murray ("Murray"), traveled to each mine and spoke to employees at awareness meetings. Id. at 8-9. During these awareness meetings, Murray educated miners "regarding the operations of the mines and their employees to ensure that MEC's core values and policies, including commitment to safety, are being implemented in the field." Id. at 9.

Local UMWA member Ann Martin ("Martin"), who was Chairperson of the Safety Committee for the Harrison County Mine at the time, attended the initial awareness meeting at the Harrison County Mine on December 11, 2013. Id. She later testified that Murray intimidated and offended miners during the awareness meeting. Id. After the meeting, Martin contacted defendant Ronald Bowersox ("Bowersox"), who is an International Safety Representative employed by the UMWA and assigned to District 31. Id. at 5, 9. Martin and Bowersox spoke after every awareness meeting to

---

[1] The companies that comprise MAEI are now indirect subsidiaries of MEC (Dkt. No. 1 at 8).

coordinate the local UMWA response to assertions made by Murray during the meetings. <u>Id.</u> at 10.

Before the 2013 sale, the UMWA had a custom and practice of first raising safety and health concerns with mine management before filing complaints under § 103(g)[2] of the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 801 (2012) ("the Mine Act"). <u>Id.</u> at 2, 7-8. In the year before MEC's acquisition, when Consol controlled the 5 mines, UMWA members generated a total of 54 § 103(g) complaints. <u>Id.</u> at 8.

Following the sale of the mines to MEC, however, UMWA members employed at the mines, who were displeased with new management, allegedly "embarked on an anti-management campaign" against MAEI. <u>Id.</u> at 2. As part of that campaign, miners began filing a significantly larger number of § 103(g) complaints, a high percentage of which were subsequently deemed meritless by the Mine Safety and Health Administration ("MSHA"). <u>Id.</u> at 2-3. After the awareness meetings, for example, the UMWA filed a total of 100 §

---

[2] Pursuant to § 103(g), a miner (or a representative of a miner) can obtain an immediate inspection of a mine when the miner has "reasonable grounds" to believe that imminent danger (or a violation of a mandatory health or safety standard) exists. 30 U.S.C. § 813(g) (2012). These so-called § 103(g) complaints are anonymous. <u>Id.</u> Employers may not discriminate against any miner who files a § 103(g) complaint. 30 U.S.C. § 815(c)(1) (2012).

103(g) complaints — an 85% increase over the prior year.  <u>Id.</u> at 10.  The number of meritless complaints increased from 27 (prior to MEC's acquisition) to 45, a 66% increase.[3]  <u>Id.</u>  In 2015, this trend continued.  Complaints at the Marshall County Mine increased by 416%; complaints at the Ohio County Mine increased by 1000%; complaints at the Monongalia County Mine increased by 87%; and complaints at the Harrison County Mine increased by 64%.  <u>Id.</u>

MAEI contends that it spent time, money, and human resources investigating each § 103(g) complaint.  <u>Id.</u>  To combat the increase in meritless § 103(g) complaints, on April 10, 2014, Murray sent a letter to the UMWA International President, Cecil E. Roberts, Jr., noting the high number of meritless § 103(g) complaints.  <u>Id.</u> at 10-11; Dkt. No. 1-6 at 2-3.  In a similar letter sent to mine superintendents, Murray requested that the UMWA, "in place of, or in conjunction with a 103(g) complaint," inform mine management of any safety issues, in compliance with Article III of the CBA (Dkt. No. 1 at 11; Dkt. No. 1-7 at 2).

---

[3] In contrast, MEC's 7 existing mines only generated an aggregate of 11 § 103(g) complaints in 2014, which was a decrease from 26 complaints received in 2013 (Dkt. No. 1 at 10).  The trend at the five mines previously owned by Consol therefore contradicted the trend at the remainder of MEC's mines.  <u>See id.</u>

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 7] AND DISMISSING CASE WITHOUT PREJUDICE**

The UMWA responded to the April 10, 2014, letter by filing a § 105(c)[4] interference complaint with MSHA (Dkt. No. 1 at 11). Bowersox testified that the purpose of the § 105(c) complaint was to stop Murray from "getting in front of a group and possibly interfering with the miners' rights under the Act." Id. MAEI contends that by its anti-management campaign, especially its failure to comply with Article III of the CBA, the UMWA has breached the CBA and interfered with MAEI's contractual right to manage its operations and employees. Id. at 3.

**B.    Procedural Background**

On September 18, 2015, MAEI filed suit in this Court, alleging that the UMWA breached the CBA by engaging in an "orchestrated, purposeful pattern of conduct to dilute MAEI's management rights by attempting to curtail or eliminate Mr. Murray's participation in the [a]wareness [m]eetings." (Dkt. No. 1 at 12). According to MAEI, its claim of breach of the CBA is actionable under § 185 of the Labor Management Relations Act of 1947, 29 U.S.C. § 141 (2012) ("LMRA"). Id. at 13.

---

[4] A miner who believes he has been discharged, interfered with, or discriminated against may file a § 105(c) interference complaint with the Secretary alleging discrimination. 30 U.S.C. § 815(c)(2).

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 7] AND DISMISSING CASE WITHOUT PREJUDICE**

Four days after MAEI filed suit in this Court, an administrative law judge ("ALJ") heard testimony in the UMWA's § 105(c) interference case (Dkt. No. 7-1 at 12).[5] The complaint filed in this Court contained deposition testimony from the interference proceeding, including testimony from three of the six individuals who had filed § 105(c) complaints (Dkt. Nos. 1-3, 1-4, 1-5). Those complainants declined to testify at the ALJ hearing out of fear that any further statements by them would become fodder for this suit (Dkt. No. 7-2 at 33). The ALJ heard the case and, on November 18, 2015, issued a decision in the UMWA's favor, finding that MAEI had violated § 105(c) by interfering with miners' rights to make anonymous § 103(g) complaints. Id. at 37-39. MAEI has appealed that decision to the Commission, and it is currently under review (Dkt. No. 10 at 6).

---

[5] The UMWA has attached exhibits, including the ALJ's opinion from the interference proceeding, to its motion to dismiss (Dkt. No. 7-2). In addition, MAEI relied on deposition excerpts from the interference proceeding in its complaint (Dkt. No. 1 at 9-11). The Court finds that the UMWA's exhibits are "integral to and explicitly relied on in the complaint . . . ," and that MAEI does not challenge their authenticity. See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234-35 (4th Cir. 2004). It therefore may consider the exhibits without converting the motion to dismiss into one for summary judgment. Id.

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 7] AND DISMISSING CASE WITHOUT PREJUDICE**

On January 13, 2016, the UMWA moved to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 7), raising the following arguments:

- MAEI has failed to arbitrate the dispute as required by the CBA;

- MAEI's claims are precluded by the ALJ's decision in the § 105(c) proceeding;

- MAEI's claims violate the CBA;

- Bowersox's role in the events was as a union official, and he is therefore an improper defendant; and

- MAEI's claims are barred by the statute of limitations.[6]

MAEI opposed the motion on February 26, 2016, contending that the crux of the case arises under the LMRA, and not the Mine Act (Dkt. No. 10). Further, it argues (1) that the CBA does not require it to resort to arbitration; (2) that a 10-year statute of limitations for breach of contract is applicable; and (3) that the case is neither precluded by the Mine Act nor the ALJ's non-final decision. Id.

---

[6] Because the Court finds that the CBA requires the parties to arbitrate the dispute, it need not address the remaining claims in the UMWA's motion to dismiss.

8

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 7] AND DISMISSING CASE WITHOUT PREJUDICE**

On March 21, 2016, pursuant to 28 U.S.C. § 517,[7] the United States filed a statement of interest urging the Court to dismiss the case for lack of subject matter jurisdiction because it improperly circumvents the administrative review procedures in the Mine Act (Dkt. No. 18).  The United States also contends that the complaint fails to state a claim upon which relief may be granted because it presumes that the civil rights afforded by the Mine Act can be waived by a CBA.  Id.  The United States takes no position on the remainder of the arguments raised by the UMWA in its motion to dismiss.

In its response to the United States' statement of interest, MAEI argues that jurisdiction exists under the LMRA, and that its complaint states a claim under that statute (Dkt. No. 24).  On May 6, 2016, the Court heard oral argument on the jurisdictional and arbitration issues.  These matters now are ripe for review.

---

[7] Section 517 permits the DOJ to "attend to the interests of the United States in a suit pending in a court of the United States . . . ."  28 U.S.C. § 517 (2012).  Pursuant to that authority, the United States may enter a statement of interest counseling dismissal.  See Republic of Austria v. Altmann, 541 U.S. 677, 714 (2004).

MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 7] AND DISMISSING CASE WITHOUT PREJUDICE

## LEGAL STANDARD

### A.    Rule 12(b)(1)

The Court construes the United States' request to dismiss the case for lack of subject matter jurisdiction as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).  At oral argument, the United States clarified its intent to bring a facial challenge — not a factual challenge — to the allegations in the complaint.

Fed. R. Civ. P. 12(b)(1) provides that the Court must dismiss a complaint if it lacks subject matter jurisdiction.  If the movant alleges that the complaint simply fails to state facts upon which subject matter jurisdiction can be based, the Court must assume that the facts in the complaint are true, and determine whether the complaint alleges sufficient facts to invoke subject matter jurisdiction.  Kerns v. United States, 585 F.3d 187, 192-93 (4th Cir. 2009) (internal quotations omitted).

### B.    Rule 12(b)(6)

In reviewing the sufficiency of a complaint, a district court "'must accept as true all of the factual allegations contained in the complaint.'"  Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).  While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

In considering whether the facts alleged are sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" <u>Anderson</u>, 508 F.3d at 188 (quoting <u>Twombly</u>, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). This requires "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u>

<u>**ANALYSIS**</u>

**A.    Subject Matter Jurisdiction**

The United States challenges this Court's subject matter jurisdiction, citing <u>Thunder Basin</u> for the proposition that the Mine Act precludes initial judicial review because Congress has established a comprehensive review process that applies to all

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 7] AND DISMISSING CASE WITHOUT PREJUDICE**

violations of the Act (Dkt. No. 18 at 13).[8]  See <u>Thunder Basin</u>, 510 U.S. at 208-09.

Thunder Basin operated a surface coal mine in Wyoming, where it employed approximately 500 non-union employees.  <u>Id.</u> at 204.  In 1990, pursuant to § 813(f) of the Mine Act, Thunder Basin employees selected two UMWA members, who were not fellow employees, to serve as their representatives to management.  <u>Id.</u>  Thunder Basin failed to post information regarding the miners' representatives as required by 30 C.F.R. § 40.4.  <u>Id.</u>  Instead, it filed suit in federal district court, seeking pre-enforcement injunctive relief.  <u>Id.</u> at 204-05.  In its suit, Thunder Basin argued that the designation of non-employee UMWA representatives violated its rights under the National Labor Relations Act.  <u>Id.</u> at 205.

The district court enjoined the Secretary from enforcing 30 C.F.R. § 40.4, finding that Thunder Basin might suffer irreparable harm and had raised serious questions on the merits.  <u>Id.</u> at 205-06.  The United States Court of Appeals for the Tenth Circuit reversed, holding that the Mine Act's review scheme precluded jurisdiction over the claims.  <u>Id.</u> at 206.

_____

[8] In its reply to MAEI's motion to dismiss, filed on the same day as the United States' statement of interest, the UMWA argues for the first time that <u>Thunder Basin</u> applies (Dkt. No. 19 at 7-10).

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 7] AND DISMISSING CASE WITHOUT PREJUDICE**

On review of the case, the Supreme Court held that parties cannot obtain initial judicial review under the Mine Act in district court unless the claims are (1) wholly collateral to the administrative review scheme, and (2) outside of the agency's expertise, particularly where a finding of preclusion could foreclose all meaningful judicial review. <u>Elk Run Coal Co., Inc. v. United States Dep't of Labor</u>, 804 F. Supp. 2d 8, 17 (D.D.C. 2011) (quoting <u>Free Enter. Fund v. Public Co. Accounting Oversight Bd.</u>, 561 U.S. 477, 489-90 (2010) (internal citations omitted)).

In the Mine Act, Congress established "a detailed structure for reviewing violations of 'any mandatory health or safety standard, rule, order, or regulation promulgated' under the Act." <u>Id.</u> at 208. The Act vests "exclusive jurisdiction over challenges to agency enforcement proceedings" in the Commission and the appropriate appeals court. <u>Id.</u> Although Thunder Basin had brought a pre-enforcement challenge, the Supreme Court held that "Congress intended to preclude challenges such as the present one[,]" because "[t]he Act's comprehensive review process does not distinguish between preenforcement and postenforcement challenges, but applies to all violations of the Act and its regulations." <u>Id.</u> at 208-09.

According to the United States, this case implicates <u>Thunder Basin</u> because it improperly circumvents the Mine Act's

13

administrative review process by attempting to frame a Mine Act

claim as one arising under the LMRA (Dkt. No. 18 at 13-14).

Although MAEI pleaded a claim under the LMRA, the United States

argues that claim requires interpretation of the parties' rights

and duties under the Mine Act, which places it within the

Commission's expertise.  Id. at 14.

MAEI contends that this Court's jurisdiction is proper under

the LMRA, which establishes a substantive federal right to have a

federal court review disputes under a CBA (Dkt. No. 24 at 9-10).

See Textile Workers Union of Am. v. Lincoln Mills of Ala., 353 U.S.

448, 455 (1957).  Even if Thunder Basin does apply, MAEI argues it

would not preclude claims based on the CBA because the dispute does

not implicate the Mine Act's remedial provisions, but, rather, only

requires the Court to interpret and determine whether the UMWA

breached the CBA (Dkt. No. 24 at 14, 17).

After carefully considering the parties' arguments, the Court

concludes that the LMRA clearly provides it with federal question

jurisdiction in cases regarding disputes over collective bargaining

agreements.  See, e.g., Lincoln Mills, 353 U.S. at 456-57.  The

crucial question is whether Thunder Basin destroys that

jurisdiction.  The Court concludes that it does not.

## MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 7] AND DISMISSING CASE WITHOUT PREJUDICE

First, MAEI's lawsuit about breach of the CBA is "wholly collateral" to the Mine Act's administrative review scheme inasmuch as it is not challenging the Secretary's interpretation or enforcement of the Act. Elk Run, 804 F. Supp. 2d at 17. Although MAEI's claim would likely require the Court to consider some provisions of the Mine Act, its essential focus is on the CBA. See Free Enter. Fund, 561 U.S. at 490 (finding the petitioners' general challenge to the Public Company Accounting Oversight Board to be "wholly collateral" to any Securities and Exchange Commission orders or rules from which review may be sought).

Second, this dispute lies outside of MSHA's expertise because it is focused primarily on a collective bargaining dispute. Elk Run, 804 F. Supp. 2d at 17. Historically, MSHA has acknowledged that other forums are more appropriate "for resolving issues so closely related to collective bargaining and union management relations [as work stoppage]." Local Union 5869, Dist. 17, United Mine Workers of Am. v. Youngstown Mine Corp., 1 FMSHRC 990, 995 (1970). For example, although MSHA can and does interpret collective bargaining agreements "for the purpose of resolving issues arising under the Mine Act," it "does not sit as a super grievance or arbitration board." Mullins v. Beth-Elkhorn Coal Corp., 9 FMSHRC 891, 899 (1987).

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 7] AND DISMISSING CASE WITHOUT PREJUDICE**

Finally, MAEI does not have access to the Commission for meaningful judicial review of the CBA,[9] and a final finding of preclusion here may foreclose all meaningful judicial review. Elk Run, 804 F. Supp. 2d at 17. The Mine Act does not give MSHA jurisdiction over MAEI's breach of CBA claims. See Am. Coal Co. v. Mine Safety and Health Admin., No. 08-CV-814, 2010 WL 653113, at *5 (S.D. Ill. Feb. 19, 2010) (explaining the jurisdictional grant of the Mine Act).

Unlike Thunder Basin, where the mine operator brought a pre-enforcement challenge to provisions of the Mine Act, MAEI seeks to enforce provisions of the CBA. See 510 U.S. at 507-08. Although MAEI's claims may tangentially "require interpretation of the parties' rights and duties" under the Mine Act, they do not arise under the Mine Act. See 510 U.S. at 214. Cases subsequent to Thunder Basin have described its holding as "a challenge to the agency's interpretation of a statute it was charged with enforcing." Ironridge Global IV, Ltd. v. Sec. and Exch. Comm'n, __

---

[9] The United States contends that MAEI could have raised its breach of CBA claim as a defense during the interference proceeding. MAEI did not, likely because this case, filed two months before the ALJ's hearing, was already pending. Under these circumstances, the Court declines to impose a rule that MAEI must bring its breach of CBA claim as a defense in the interference proceeding or risk losing any opportunity to obtain relief.

## MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 7] AND DISMISSING CASE WITHOUT PREJUDICE

F. Supp. 3d __, No. 1:15CV2512, 2015 WL 7273262, at *5 (N.D. Ga. Nov. 17, 2015).

Assuming all facts in the complaint are true, as the Court must, MAEI is not challenging the interpretation of the Mine Act, but rather the UMWA's failure to abide by the CBA.  See Kerns, 585 F.3d at 193.  For all of these reasons, therefore, the Court declines to dismiss the case for lack of subject matter jurisdiction.

## B.  Arbitration

The UMWA argues that the Court should dismiss MAEI's complaint for failure to exhaust mandatory arbitral remedies before filing suit in district court (Dkt. No. 7-1 at 9).  It points to Articles XXVII and XXVIII of the CBA, which outline a detailed grievance process, including arbitration, and an agreement to settle all disputes and claims "unless national in character" by the grievance process "without recourse to the courts."  CBA, Art. XXVII, Art. XXVIII(c).  The UMWA urges the Court to follow Domino Sugar Corp. v. Sugar Workers Local Union 392 of the United Food & Com. Workers Int'l Union, 10 F.3d 1065, 1066 (4th Cir. 1993), which provides a presumption in favor of arbitrability unless the arbitration clause is not susceptible of an interpretation that covers the asserted dispute (Dkt. No. 7-1 at 8).

17

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 7] AND DISMISSING CASE WITHOUT PREJUDICE**

MAEI contends that the CBA does not require it to grieve the claim in this case because an employer is not required to grieve disputes over the CBA (Dkt. No. 10 at 8). It argues that the decision of the United States Court of Appeals for the Eleventh Circuit in <u>Jim Walter Res., Inc. v. United Mine Workers of Am.</u>, 633 F.3d 1322, 1324 (11th Cir. 2011), which analyzed the same CBA at issue here and concluded the employer was not compelled to grieve a dispute over the CBA, is persuasive and on point. <u>Id.</u> at 8, 11-13. According to MAEI, <u>Domino Sugar</u>'s presumption of arbitrability does not apply, and, even if it did, the Supreme Court limited its scope in <u>Granite Rock Co. v. Int'l Bhd. of Teamsters</u>, 561 U.S. 287, 296 (2010). <u>Id.</u> at 8, 12.

The question of arbitrability is to be determined by the Court unless the parties "clearly and unmistakably" provide otherwise. <u>United Steelworkers of Am. v. Warrior & Gulf Nav. Co.</u>, 363 U.S. 574, 582-83 (1960). A court may submit to arbitration only those disputes the parties have agreed to submit. <u>Granite Rock</u>, 561 U.S. at 302.

When a labor agreement contains an arbitration provision, courts must find in favor of arbitrability "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

Doubts should be resolved in favor of coverage." <u>Domino Sugar</u>, 10 F.3d at 1069 (quoting <u>AT&T Tech., Inc. v. Commc'n Workers of Am.</u>, 475 U.S. 643, 650 (1986) (internal quotation marks, citations, and emphasis omitted)). The policy favoring arbitration, however, only applies where it reflects "a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed . . . ," is legally enforceable and is best construed to encompass the dispute. <u>Granite Rock</u>, 561 U.S. at 303.

The Court must first examine the CBA to determine whether it requires arbitration. Article XXVII, titled "Maintain Integrity of Contract and Resorts to Courts," reflects the intention of the parties to submit "all disputes and claims which are not settled by agreement" to the process in Article XXVIII. CBA, Article XXVII. Under Article XXVII, all disputes, except for cases involving successorship or disputes that are "national in character," must be settled using the dispute resolution process.[10] <u>Id.</u>

Article XXVIII confirms the broad nature of the parties' agreement to arbitrate. It specifies that the parties should use

---

[10] MAEI's focus on Article III of the CBA, <u>see</u> Dkt. No. 10 at 4-5, 9, would yield the same result because Article III refers the grievant to the dispute resolution framework in Article XXVIII(c). <u>See</u> Article III(i)(4), III(p)(3).

the dispute resolution procedure to resolve "differences . . .
between the Mine Workers and an Employer as to the meaning and
application of the provisions of this Agreement . . .,"
"differences . . . about matters not specifically mentioned in this
Agreement . . . ," or "any local trouble of any kind . . . at the
mine." CBA, Article XXVIII(c).

The dispute resolution process involves multiple steps. The
employee must first complain to his immediate foreman, who has the
authority to settle the matter. If the foreman and employee do not
agree, the complaint is submitted to the Mine Committee and mine
management. Next, the grievance is referred to a representative of
the UMWA and a representative of the employer. If the
representatives fail to agree, the dispute is referred "to the
appropriate district arbitrator, who shall decide the case without
delay." CBA, Article XXVIII(c)(1)-(4). The arbitrator's decision
is final. CBA, Article XXVIII(c)(4).

Here, the parties agreed in the CBA to arbitrate this dispute.
Articles XXVII and XXVIII reflect the broad scope of arbitrable
matters, which include "all disputes and claims," differences about
the meaning of the CBA, and differences not specifically mentioned
in the CBA. CBA, Articles XXVII, XXVIII. This dispute centers on
provisions in the CBA that allegedly require UMWA members first to

20

report safety concerns to management. That the grievance procedure mentions an "employee," as opposed to the employer, filing a complaint is not dispositive for two reasons.

First, the CBA itself says that employers must use the procedure set forth in Article XXVIII. Article XXVIII(c) specifically states that the parties must use the procedure "[s]hould differences arise between the Mine Workers and an Employer as to the meaning and application of the provisions of this Agreement." CBA, Article XXVIII(c) (emphasis added).

Second, binding Fourth Circuit precedent directs the Court to submit the case to arbitration. Akin to this case, Domino Sugar dealt with an arbitration clause that lacked a provision requiring the employer to arbitrate a dispute. 10 F.3d at 1069. The Fourth Circuit rejected the same argument advanced by MAEI, noting in doing so that it "must interpret a collective bargaining agreement as imposing arbitration requirements on an employer unless 'there is an express, flat limitation that arbitration boards should consider only employee grievances.'" Id. (quoting Atkinson v. Sinclair Ref. Co., 370 U.S. 238, 243 (1962)). Thus, even if the CBA were silent, the Court would interpret it as requiring MAEI to arbitrate.

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS' MOTION TO
DISMISS [DKT. NO. 7] AND DISMISSING CASE WITHOUT PREJUDICE**

The Eleventh Circuit's decision in <u>Jim Walter</u>, on which MAEI so heavily relies, does not compel a different conclusion. In point of fact, <u>Jim Walter</u> recognized that the Fourth Circuit had reached a different result in <u>Domino Sugar</u>. <u>Jim Walter</u>, 663 F.3d at 1327 (noting that, in addition to the Fourth Circuit, the Second and Third Circuits also have applied a presumption of arbitrability to compel employers to arbitrate where the contract expressed a general commitment to arbitrate disputes, because "if the parties had intended to exclude employer initiated claims from arbitration, they could and should have said so.").

MAEI's other argument, that <u>Granite Rock</u> drastically changed the landscape of arbitration law in the Fourth Circuit, is similarly unavailing.[11] In <u>Granite Rock</u>, the Supreme Court reaffirmed that courts must interpret the parties' agreement and determine whether they agreed to arbitrate disputes involving a particular matter. 561 U.S. at 301. To that end, courts apply the presumption of arbitrability "only where a validly formed and

---

[11] To the contrary, in post-<u>Granite Rock</u> cases, the Fourth Circuit rejected the suggestion that <u>Granite Rock</u> compelled courts to narrowly construe all arbitration clauses. <u>See, e.g.</u>, <u>Cent. W. Va. Energy, Inc. v. Bayer Crop-Science LP</u>, 645 F.3d 267, 277 n.11 (4th Cir. 2011)(explaining that <u>Granite Rock</u> narrowly held that the phrase "arising under" in an arbitration clause did not extend to cover disputes about the agreement's formation).

enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand," and adhere to the presumption unless it is rebutted. Id. (internal citations and quotation marks omitted).

The Supreme Court cautioned courts to respect the framework for deciding arbitrability, and not let the presumption of arbitrability override the principle that "a court may submit to arbitration only those disputes . . . that the parties have agreed to submit." Id. at 302 (internal citations and quotation marks omitted). Here, the Court has followed the Supreme Court's directive by determining that the parties intended to arbitrate the instant dispute.

**C.    Motion to Dismiss**

Although the Federal Arbitration Act directs courts to stay cases subject to arbitration, 9 U.S.C. § 3 (2012), the Fourth Circuit, in Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001), held that dismissal is proper when all issues in a lawsuit are arbitrable. Because all issues in this case are arbitrable, the Court exercises its discretion to grant the UMWA's motion and dismiss the case in favor of arbitration. See Cox v. Assisted Living Concepts, Inc., No. 6:13-00747, 2014 WL 1094394, at *7-8 (D.S.C. Mar. 18, 2014)

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS' MOTION TO DISMISS [DKT. NO. 7] AND DISMISSING CASE WITHOUT PREJUDICE**

(dismissing the case without prejudice for failure to arbitrate when all claims are subject to arbitration).

**CONCLUSION**

For the reasons discussed, the Court **GRANTS** the UMWA's motion to dismiss (Dkt. No. 7) and **DISMISSES** the case **WITHOUT PREJUDICE.**

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record, to enter a separate judgment order, and to remove this case from the Court's active docket.

DATED:  June 10, 2016.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE